IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SYLVESTER JACKSON,

                                          Plaintiff,

      v.

RANDALL HEPP, JUDY SMITH,
DEBRA BOYD, RICK RAEMISCH,
GARY HAMBLIN, M. OLSEN,
P. SCHULZ, TAMMY MAASSEN,
CAPT. COOK, CAPT. FOSTER,
CAPT. JENSEN, LT. LACOST,
SGT. GARCIA, SGT. GEROGE,
DGT. GILLET, C/O LEE, T. MARCO,
C/O OLSON, C/O PETKOVSEK,
C/O BIDDLE, DEBRA TIDQUIST,
KENNETH ADLER, GEORGIA KOSTOHRYZ,
MS. DOUGHERTY, MR. FLIEGER,

                                          Defendants.

ORDER

16-cv-542-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Sylvester Jackson is suing a variety of prison officials about a variety of matters that occurred between 2010 and 2013 at the Jackson Correctional Institution in Black River Falls, Wisconsin. Plaintiff has paid the filing fee in full, but because he is a prisoner, I must screen his complaint in accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A. Having done so, I conclude that I cannot allow him to proceed on any claims at this time because his complaint includes too many unrelated claims against different defendants. I will give plaintiff an opportunity to choose which claims he wishes to pursue in this case,

1

which claims he wants to pursue in a different case and which claims he wishes to dismiss without prejudice to refiling them at a later date.

Under Fed. R. Civ. P. 20, Fed. R. Civ. P. 21 and a court's inherent authority, a lawsuit may be severed when it includes unrelated claims against different defendants. Lee v. Cook County, Illinois, 635 F.3d 969, 971 (7th Cir. 2011); In re High Fructose Corn Syrup Antitrust Litigation, 361 F.3d 439, 441 (7th Cir. 2004); Aiello v. Kingston, 947 F.2d 834, 835 (7th Cir. 1991). As the Court of the Appeals for the Seventh Circuit has stated, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). Lawsuits with so many unrelated claims are both unfair to defendants (who must participate in many proceedings that have little to do with them) and difficult to manage for the court and the plaintiff (who may find it impossible to litigate so many claims at the same time, with or without a lawyer). Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) ("[U]nrelated claims against different defendants belong in separate lawsuits . . . to prevent the sort of morass produced by multi-claim, multi-defendants suits.") (internal quotations omitted). Thus, when a plaintiff tries to cram too much into one case, the court may require the plaintiff "to file separate complaints, each confined to one group of injuries and defendants." Wheeler, 689 F.3d at 683.

A review of plaintiff's complaint reveals that it includes at least a dozen separate lawsuits, which are identified below:

Lawsuit #1:

- Sometime after October 13, 2010, defendant Garcia "ignor[ed]" plaintiff when he complained about a "serious medical need," Cpt. ¶ 31, dkt. #1;

- sometime after October 13, 2010, defendant Garcia "began harassing" plaintiff after plaintiff complained that Garcia was racist, id. at ¶ 32;

- around October 15, 2010, defendant Garcia gave plaintiff a conduct report for using the microwave because plaintiff had complained about Garcia's racist behavior, id. at ¶ 33; defendants Schulz and Jensen observed the incident but did not intervene, ¶ 34;

- defendant Foster refused to allow plaintiff to call witnesses during the disciplinary hearing, id. at ¶ 38;

- defendant Foster found plaintiff guilty of the conduct report, even though Foster knew that plaintiff had done nothing wrong, id. at ¶ 37;

- defendant Foster gave plaintiff harsher discipline than a white prisoner who had been accused of similar conduct, id. at ¶ 38;

- after plaintiff was released from segregation, defendants Foster and Garcia transferred plaintiff to a different unit so that plaintiff would lose his job, id. at ¶ 39;

- when plaintiff complained to defendants Hepp and Boyd about Foster's and Garcia's conduct, Hepp and Boyd refused to do anything, id. at ¶¶ 40-42.

Lawsuit #2

- On February 14, 2011, defendant Flieger refused to photocopy legal documents for plaintiff because they were related to a lawsuit against the warden, id. at ¶¶ 43-45;

- after hearing about the lawsuit, defendant Hepp directed defendant Jensen to search plaintiff's cell, confiscate his complaint and give plaintiff a false conduct report, id. at ¶¶ 46, 73-74;

- when plaintiff complained to defendant Cook, Cook said that "it could have been worse," ¶ id. at 74;

- defendants Hepp and Hamblin denied a grievance that plaintiff filed about this issue, ¶ id. at 47;

- defendant Foster disciplined plaintiff more harshly than other prisoners who were accused of similar conduct, ¶¶ id. at 48-50;

- on May 2, 2011, defendant Lee gave plaintiff a false conduct report because of his lawsuit against Hepp, id. at ¶ 52;

- defendant Foster found plaintiff guilty, even though he knew that plaintiff did nothing wrong, id. at ¶ 53;

- when plaintiff complained to defendant Hepp, Hepp upheld the discipline, id. at ¶ 55;

- when plaintiff complained to defendant Olson about Lee's unfair treatment, Olson did not respond, id. at ¶ 63.

Lawsuit #3

- Defendants Maassen, Adler and Tidquist delayed plaintiff's medical appointments, id. at ¶ 58.

Lawsuit #4

- In August 2011, defendants Foster and Hepp refused to give plaintiff his legal materials while he was confined in segregation, id. at ¶ 59;
- when plaintiff complained to defendants Foster and Hepp that the walls of his cell were covered with racist language and symbols, they refused to move him to a different cell, id. at ¶¶ 61-62.

Lawsuit #5

- On September 8, 2011, after plaintiff had an "altercation" with another officer, defendant George called plaintiff "degrading" names and gave him a false conduct report, id. at ¶ 60;
- defendant Foster found plaintiff guilty of the conduct report, id. at ¶ 60.

Lawsuit #6

- Defendant Petkovsek told plaintiff that he had plaintiff "in [his] crosshairs," id. at ¶ 62.

5

Lawsuit #7

- Defendant Kostohryz refused to provide medical care to plaintiff when he was in segregation, id. at ¶ 62;

- in August and September 2012, defendant Maasen and defendant Adler refused to treat plaintiff's back pain, id. at ¶¶ 75-76;

Lawsuit #8

- In December 2011, defendant Marco prevented plaintiff from seeing his lawyer, id. at ¶ 64-65.

Lawsuit #9

- In March 2012, defendant Olson allowed a white supremacist prisoner to assault plaintiff, id. at ¶ 66;

- when plaintiff asked defendants Lacost, Jensen, Olson and Hepp to contact the sheriff about the assault, they refused and put plaintiff in segregation when he continued to ask, id. at ¶ 67;

- defendant Olson threw plaintiff's "seasoning" in the garbage after plaintiff complained about Olson, id. at ¶ 71.

Lawsuit #10

- Defendants Gillett and Schulz gave preferential treatment to white prisoners in the

context of job and housing assignments, id. at ¶ 77;

• In October 2012, when plaintiff complained to defendant Judy Smith about the preferential treatment, she refused to do anything, ¶ 77.

Lawsuit #11

• Defendants Schulz and Flieger gave plaintiff a false conduct report, id. at ¶ 78;

• in October and November 2012, when plaintiff complained to defendants Smith and Dougherty about the false conduct report, they failed to do anything, id. at ¶¶ 78-79;

• defendant Dougherty refused to allow plaintiff to take a culinary class, id. at ¶ 80.

Lawsuit #12

• Defendant Biddle "started picking on" plaintiff and made him leave the chow hall, then "harass[ed]" plaintiff by calling him to the officers' station three times, id. at ¶¶ 81-83;

• Biddle grabbed plaintiff's arm and poked him in the chest twice, id. at ¶ 84.

Under George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), I may apply the filing fee plaintiff has paid to only one of the 12 Lawsuits I have identified above. Plaintiff will have to choose which Lawsuit that is. That Lawsuit will be the only Lawsuit assigned to this case number.

With respect to the other 11 Lawsuits, plaintiff has to make a choice. One option for plaintiff is to pursue the other Lawsuits separately. In that case, he will be required to pay

7

a separate filing fee for each Lawsuit. In addition, plaintiff may receive a "strike" under 28 U.S.C. § 1915(g) for each of the separate Lawsuits he pursues if the Lawsuit is dismissed for failure to state a claim upon which relief may be granted or one of the other reasons listed in § 1915(g). As plaintiff may be aware, once a prisoner receives three strikes, he is not able to proceed in new cases without first paying the full filing fee except in narrow circumstances. 28 U.S.C. § 1915(g).

Alternatively, plaintiff may choose to dismiss one or more of the other Lawsuits voluntarily. If he chooses this latter route, he will not owe additional filing fees or face a strike for any Lawsuit he dismisses. Any Lawsuit dismissed voluntarily would be dismissed without prejudice, which means that plaintiff would be able to bring it at another time, so long as he files it before the statute of limitations has run. (In Wisconsin, the statute of limitations for a claim brought under 42 U.S.C. § 1983 is six years. <u>Reget v. City of La Crosse</u>, 595 F.3d 691, 694 (7th Cir. 2010).).

Plaintiff should be aware that because it is not clear at this time which of his separate Lawsuits he will pursue, I have not assessed the merits of the claims raised in any of the Lawsuits identified above or determined whether they provide fair notice, as required by Fed. R. Civ. P. 8. Once plaintiff identifies the suit or suits he wants to continue to litigate, I will screen the complaint as required under 28 U.S.C. § 1915A. Because plaintiff faces filing fees and potential strikes for each lawsuit he pursues, he should consider carefully the merits and relative importance of each of his potential Lawsuits when choosing which of them he wishes to pursue.

If plaintiff disagree with the way the court has grouped his claims or if he believes the court has left out claims he intended to assert or included claims he did not intend to assert, he may raise those objections, but he must still comply with this order and choose which of the 12 Lawsuits he wishes to pursue. If he fails to do so, I will dismiss all of his claims for his failure to comply with a court order.

ORDER

IT IS ORDERED that

1. Plaintiff Sylvester Jackson may have until October 12, 2016, to identify for the court whether he wishes to proceed with Lawsuit #1, Lawsuit #2, Lawsuit #3, Lawsuit #4, Lawsuit #5, Lawsuit #6, Lawsuit #7, Lawsuit #8, Lawsuit #9, Lawsuit #10, Lawsuit #11 OR Lawsuit #12 under the case number assigned to this case. Plaintiff must pick one and only one of these lawsuits to proceed under case no. 16-cv-542-bbc.

2. Also by October 12, 2016, plaintiff is to tell the court which other Lawsuits he wishes to pursue under separate case numbers, if any, and which Lawsuits he will dismiss voluntarily, if any.

3. For any Lawsuit that plaintiff dismisses voluntarily, he will not owe a filing fee and he will be permitted to refile the dismissed claims at a later date, so long as he complies with the statute of limitations.

4. For each Lawsuit plaintiff chooses to pursue, he will owe a separate filing fee.

5. Once plaintiff chooses which lawsuits he wants to pursue, I will screen the claims

9

under 28 U.S.C. § 1915A to determine whether they state a claim upon which relief may be granted. If plaintiff fails to respond to this order by October 12, 2016, I will enter an order dismissing his claims without prejudice for his failure to prosecute them.

Entered this 27th day of September, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge